*Cat 7   1541*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUE MIZAK and** | ) | |
| **LINDA WERMLINGER** | ) | |
| *Ex rel.* | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No.:** `13-1688` |
| **Plaintiffs/ Relators,** | ) | |
| | ) | |
| **v.** | ) | **FILED UNDER SEAL** |
| | ) | **PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| | ) | **DO NOT PLACE IN PRESS BOX** |
| **HORIZONS HOSPICE, LLC;** | ) | **DO NOT ENTER ON PACER** |
| **PUNXSY MEDICAL SUPPLY, LLC;** | ) | |
| **PUNXSY MEDICAL SUPPLY, LLC** | ) | |
| **D/B/A REZK MEDICAL SUPPLY;** | ) | NOV 2[ ] 2013 |
| **REZK MEDICAL SUPPLY, LLC;** | ) | |
| **JOHN C. REZK, INDIVIDUALLY;** | ) | |
| **JOSEPH REZK, INDIVIDUALLY.** | ) | WESTERN DISTRICT OF PENNSYLVANIA |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANED** |

## QUI TAM COMPLAINT

NOW COMES Plaintiff- Relators Sue Mizak and Linda Wermlinger, by and through their Attorney, Robert M. Davant, III, on behalf of themselves and the United States of America, allege and claim against Horizons Hospice, LLC, Punxsy Medical Supply, LLC, Punxsy Medical Supply, LLC d/b/a Rezk Medical Supply, LLC, and Rezk Medical Supply, LLC, and aver as follows:

## SUMMARY INTRODUCTION

1.     This is an action by qui tam Relators SUE MIZAK and LINDA WERMLINGER, on behalf of the United States of America, against Defendant, HORIZONS HOSPICE, LLC, PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY and REZK MEDICAL SUPPLY, LLC to recover penalties and damages

arising from mischarges and false statements made by HORIZONS HOSPICE, LLC, PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY and REZK MEDICAL SUPPLY, LLC to receive payment for improperly enrolling patients for hospice care benefits who were not properly qualified as being terminally ill pursuant to 42 U.S.C. § 1395. Additionally, Defendants violated The Medicare and Medicaid Fraud and Abuse Statute (Anti-Kickback Statute), 42 U.S.C. § 1320a-7b(b), in furtherance of a scheme to defraud the United States of America.

## PARTIES

2.      Relator SUE MIZAK, is a citizen of the Commonwealth of Pennsylvania, Allegheny County.

3.      Relator LINDA WERMLINGER, is a citizen of the Commonwealth of Pennsylvania, Allegheny County.

4.      Defendant HORIZONS HOSPICE, LLC owns and operates hospice care facilities in the States of Pennsylvania, Maryland and Virginia. HORIZONS HOSPICE, LLC is a corporation organized and existing under the law of the Commonwealth of Pennsylvania and having its principal place of business in Allegheny County, Pennsylvania. This corporation is owned in whole or in part by John C. Rezk, who is the Executive Director of Horizons Hospice, LLC. According to the Pennsylvania Department of State/ Corporation Bureau, the address for Horizons Hospice, LLC is 115 S. Main St. Carrolltown, PA. 15722.

5.      Defendant Punxsy Medical Supply, LLC, Punxsy Medical Supply d/b/a Rezk Medical Supply and Rezk Medical Supply, LLC are corporations organized and existing under the law of the Commonwealth of Pennsylvania and having their principal place of business in Cambria

County, Pennsylvania. According to the Pennsylvania Department of State/ Corporation Bureau, the address for Punxsy Medical Supply, LLC is 115 S. Main St. Carrolltown, PA. 15722. According to the Pennsylvania Department of State/ Corporation Bureau, the address for Rezk Medical Supply, LLC is 115 S. Main St. Carrolltown, PA. 15722.

6.      Punxsy Medical Supply, LLC is an active corporation, which is owned in whole or in part by Joseph Rezk and or John C. Rezk. A Certificate of Organization Domestic Limited Liability Company (15 Pa.C.S. § 8913) was signed by Joseph Rezk on July 24, 2008 and filed on July 28, 2008 regarding Punxsy Medical Supply. According to the Pennsylvania Department of State/ Corporation Bureau, the address for Punxsy Medical Supply, LLC is 115 S. Main St. Carrolltown, PA. 15722.

7.      REZK MEDICVAL SUPPLY, LLC was created by both JOHN C. REZK and JOSEPH REZK by filing a Certificate of Organization Domestic Limited Liability Company (15 Pa.C.S. § 8913) on December 19, 2006, which was signed for by both Joseph Rezk and John C. Rezk on December 14, 2006. The specified effective date for Rezk Medical Supply, LLC was January 1, 2007. On June 3, 2008 a Certificate of Dissolution (§8975) was filed for REZK MEDICAL SUPPLY, LLC and was signed for by JOSEPH REZK as "Member/Manager" on November 3, 2008. According to the Pennsylvania Department of State/ Corporation Bureau, the address for REZK MEDICAL SUPPLY, LLC is/was 115 S. Main St. Carrolltown, PA. 15722

8.      To this day, the website for HORIZONS HOSPICE, LLC states, "With our clinical partners, we have access to whatever our patients need." It identifies "REZK MEDICAL SUPPLY" as its "clinical partner" to "provide Durable Medical Equipment (DME) needed to aid in a better quality service." By clicking on "REZK MEDICAL SUPPLY" through the website for HORIZONS HOSPICE, LLC it takes the user to a website identifying the company as

"PUNXSY MEDICAL SUPPLY, LLC" and "REZK MEDICAL SUPPLY, LLC." It should be noted that ALL DEFENDANTS have the same address, which was provided to the Pennsylvania Department of State/ Corporation Bureau, 115 S. Main St. Carrolltown, PA. 15722. PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC, and REZK MEDICAL SUPPLY, LLC are the same corporation. PUNXSY MEDICAL SUPPLY, LLC is the alter ego of REZK MEDICAL SUPPLY, LLC and change in the corporate form represents a change in name only and represents a continuation of the same corporation and an attempt to avoid legal responsibilities. The fraud as described herein should further require and allow the piercing of the corporate veil and the holding of the individual owners personally liable. Plaintiffs herein plead successor liability of Defendant, PUNXSY MEDICAL SUPPLY, LLC for the fraudulent acts and omissions of REZK MEDICAL SUPPLY, LLC.

## JURISDICTION AND VENUE

9.      This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

10.     This action also arises under the Medicare and Medicaid Fraud and Abuse Statute, 42 U.S.C. § 1320, et seq.

11.     This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act) Medicare and Medicaid Fraud and Abuse Statute 42 U.S.C. § 1320a-7b(b) (Anti- Kickback Statute), and 28 U.S.C. § 1331 (Federal Question).

12.     Venue is proper in this Court pursuant to 31 U.S.C. §§ 3732(a) because HORIZONS HOSPICE, LLC transacts business in this district and did so at all relevant times to this Complaint. Further, HORIZONS HOSPICE, LLC and JOHN C. REZK, violated provisions

proscribed by 28 U.S.C. § 3729 et seq. by and through acts and omissions within this District giving rise to this action.

13.     Venue is proper in this Court pursuant to 31 U.S.C. §§ 3732(a) because JOSEPH REZK, PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC transacts and or have transacted business in this district and did so at all relevant times to this Complaint. Further, JOSEPH REZK, PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC, and REZK MEDICAL SUPPLY, LLC violated provisions proscribed by 28 U.S.C. § 3729 et seq. by and through acts and omissions within this District giving rise to this action

14.     Prior to the time of filing this Complaint, Relators, SUE MIZAK and LINDA WERMLINGER served a copy of a written disclosure statement setting forth and enclosing all material evidence and information they possess, pursuant to the requirements of 31 U.S.C. § 3730 (b)(2).

15.     At the time of filing this Complaint, Relators, SUE MIZAK and LINDA WERMLINGER, served a copy of same upon the United States.

16.     Relators, SUE MIZAK and LINDA WERMLINGER, have complied with all other conditions precedent to bringing this action.

17.     Relators, SUE MIZAK and LINDA WERMLINGER, are the original sources of, and have direct and independent knowledge of, all information disclosed herein on which the allegations herein are based, and has voluntarily provided such information to the United States Government at the time of filing this action under seal.

## INTRODUCTION

## THE FEDERAL FALSE CLAIMS ACT

18.      The False Claim Act (FCA) was originally enacted in 1863 during the Civil War in

response to fraud by war profiteers, and was substantially amended in 1986 by the False Claims

Amendments Act, Pub.L. 99-562, 100 Stat. 3153. Congress enacted the 1986 amendments to

enhance and modernize the Government's tools for recovering losses sustained by frauds against

it after finding that federal program fraud was pervasive. The amendments were intended to

create incentives for individuals with knowledge of Government frauds to disclose the

information without fear of reprisals or Government inaction, and to encourage the private bar to

commit resources to prosecuting fraud on the Government's behalf.

19.      The Act provides that any person who presents, or causes to be presented, false or

fraudulent claims for payment or approval to the United States Government, or knowingly

makes, uses, or causes to be made or used false records and statements to induce the Government

to pay or approve false and fraudulent claims, is liable for a civil penalty ranging from $5,500 up

to $11,000 for each such claim, plus three times the amount of the damages sustained by the

federal Government. Plaintiffs- Relators seek recovery of same on behalf of the United States of

America.

20.      The Act allows any person having information about false or fraudulent claims to

bring an action for himself and the Government, and to share in any recovery. The Act requires

that the complaint be filed under seal for a minimum of 60 days (without service on the

defendant during that time). Based on these provisions, *qui tam* Plaintiffs- Relators seek through

this action to recover all available damages, civil penalties, and other relief for state and federal

violations alleged herein.

21.     Although the precise amount of the loss from Defendant's misconduct alleged in this action cannot presently be determined, it is estimated that the damages and civil penalties that may be assessed against the Defendants under the facts alleged in this Complaint amounts to millions of dollars.

22.     The text of the False Claims Act provides, in pertinent part, that:

(a) Any person who...(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval; [and] (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; ...***is liable to the United States Government for a civil penalty of not less than $[5,500] and not more than $[11,000], plus 3 times the amount of damages which the Government sustains because of the act of that person....(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information...(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729. Based on these provisions, *qui tam* Plaintiffs- Relators seek through this action to recover all available damages, civil penalties, and other relief for state and federal violations alleged herein.

## THE ANTI- KICKBACK STATUTE

23.     The Medicare and Medicaid Fraud and Abuse Statute (Anti-Kickback Statute), 42 U.S.C. § 1320a-7b(b), was enacted under the Social Security Act in 1977. The Anti-Kickback Statute arose out of Congressional concern that payoffs to those who can influence health care decisions will result in goods and services being provided that are medically inappropriate,

unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of federal health care programs from these difficult to detect harms, Congress enacted a prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback actually gives rise to over utilization or poor quality of care.

24.     The Anti-Kickback Statute prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for the purchase of any item for which payment may be made under a federally-funded health care program. 42 U.S.C. § 1320a-7b(b). The statute not only prohibits outright bribes and rebate schemes, but also prohibits offering inducements or rewards that has as one of its purposes inducement to refer patients for services that will be reimbursed by a federal health care program. The Statute ascribes liability to both sides of an impermissible kickback relationship.

25.     Violation of the Anti-Kickback Statute subjects the violator to exclusion from participation in federal health care programs, civil monetary penalties, and imprisonment of up to five years per violation. 42 U.S.C. §§ 1320a-7(b)(7), 1320a-7a(a)(7).

26.     Compliance with the Anti-Kickback Statute is a precondition to participation as a health care provider under the Medicare/ Medicaid  health care programs. Accordingly, claims for reimbursement for inpatient or outpatient services under these programs that were the result of referrals tainted by kickbacks, are false claims and are not entitled to reimbursement.

27.     Providers who participate in a federal health care program generally must certify that they have complied with the applicable federal rules and regulations, including the Anti-Kickback law.

28.     Any party convicted under the Anti-Kickback Statute must be excluded (i.e., not allowed to bill for services rendered) from federal health care programs for a term of at least five

years. 42 U.S.C. § 1320a-7(a)(1). Even without a conviction, if the Secretary of HHS finds administratively that a provider has violated the statute, the Secretary may exclude that provider from the federal health care programs for a discretionary period (in which event the Secretary must direct the relevant State agency or agencies to exclude that provider from the State health program), and may consider imposing administrative sanctions of $50,000 per kickback violation. 42 U.S.C. § 1320a-7(b).

## THE MEDICARE HOSPICE BENEFIT

29.     Medicare was created in 1965 through Title XVIII of the Social Security Act. Medicare Part A covers hospitals, home health, nursing facilities and hospice care.

30.     Medicaid is the federally funded health care program for certain people and families with low incomes and resources. It is a means-tested program that is jointly funded by state and federal governments, and is managed by the states. To date, Medicaid is the largest source of funding for medical and health related services for people with limited income in the United States. Medicaid was created on July 30, 1965, through Title XIX of the Social Security Act.

31.     During the 1970s, the hospice industry was created in the United States through non-profit, volunteer organizations, to bring comfort and care to terminally ill patients. Hospice care in the United States was initially motivated by philosophical, spiritual, altruistic and medical charity and care-giving.

32.     In 1982, Congress created a provisional Medicare Hospice Benefit, made permanent in 1986.  Since that time, many for- profit hospices, including Defendant, Horizons Hospice, LLC, have employed aggressive marketing schemes, and greed based business models, to maximize profits through government payments at the expense of the care and comfort of terminally ill patients.

33.     Through Medicare and/or Medicaid, the United States government reimburses hospice providers for the services provided to qualified patients and pays for all or part of associated medical equipment and supplies.

34.     The Centers for Medicare and Medicaid Services ("CMS") promulgate regulations, and establish requirements for service delivery, quality, funding and eligibility standards.

35.     Through Medicare and/or Medicaid (indirectly through the States), the United States reimburses hospice providers for services to qualified beneficiaries on a per diem rate for each day a qualified beneficiary is enrolled. Medicare and/or Medicaid makes a daily payment, regardless of the amount of services on a given day and even on days when no services are provided. The daily payment rates are intended to cover costs that Hospice providers incur in furnishing services identified in patients' care plans for patients who have been determined by their physicians to be suffering from a terminal illness.

36.     Payments are made according to a fee schedule that has four base payment amounts for the four categories of care: Routine Home Care ("RHC"), Continuous Home Care ("CHC"), Inpatient Respite Care ("IRC"), and General Inpatient Care ("GIC"). The four categories are distinguished by the location and intensity of the services provided and the base payments for each category reflect variation in expected input cost differences. Unless a hospice provides CHC, IRC, or GIC on any given day, it is paid at the RHC rate. For any given patient, the type of care can vary throughout the hospice stay as the patient's needs change.

37.     Hospice covers a broad set of palliative services for qualified beneficiaries who have a life expectancy of six (6) months or less. Qualified hospice patients may receive skilled nursing services, medication for pain and symptom control, physical and occupational therapy, counseling, home health aide and homemaker services, short- term inpatient care, inpatient

respite care, medical equipment and supplies, speech therapy, social work services, dietary counseling, grief and loss counseling for the patient and the family, spiritual counseling and other services for the palliation and management of the terminal illness.

38.     Leslie Novak, Acting Director of the Centers for Medicare and Medicaid Service during 2007, testified before the U.S. House of Representatives Committee on Ways and Means that, "Hospice is not intended to be used as a nursing home."

39.     Qualified beneficiaries who elect the Medicare Hospice Benefit agree to forego curative treatment for their terminal condition. The patient signs a statement choosing hospice care rather than curative treatments.

40.     In order to receive hospice care, a patient's doctor and the Medical Director of a hospice facility are required to certify that the patient is terminally ill and likely has less than six (6) months to live. If the patient lives longer than six months, he or she can continue to receive hospice care as long as a physician recertified that the patient is still terminally ill with a life expectancy of less than six months.

41.     A hospice is required to be certified by Medicare in order to receive Medicare payments. Under Medicare statutes and regulations, it must establish a plan of care for each patient based on that patient's specific needs.

42.     Applicable provisions of federal regulations at 42 C.F.R. Part 418 and other federal regulations and statutes provide for payment to hospice agencies.

43.     In the current fiscal year (2013) Medicare pays $146.63 per day for RHC (Routine Home Care), $855.79 per day for CHC (Continuous Home Care), $151.67 per day for IRC (Inpatient Respite Care), and $652.27 per day for GIC (General Inpatient Care).

## SPECIFIC CONDUCT OF DEFENDANTS

## DEFENDANTS' VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT (FCA)

44.    In connection with the receipt of reimbursement from the United States Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"), Defendants committed fraud against the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ccc and 42 C.F.R. Parts 400-1004, by (a) knowingly presenting, and causing to be presented to an officer and employee of the United States Government false and fraudulent claims for payment and approval; and (b) knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent claims paid and approved by the Government, in violation of 31 U.S.C. §§ 3729(a)(1) and (2). Defendants violated The Medicare and Medicaid Fraud and Abuse Statute (Anti-Kickback Statute), 42 U.S.C. § 1320a-7b (b) in furtherance of a fraudulent scheme to defraud the United States of America.

## VIOLATIONS OF THE FALSE CLAIMS ACT (FCA) BY HORIZONS HOSPICE, LLC

45.    In brief, Defendant, HORIZONS HOSPICE, LLC is a private, for-profit hospice chain, which has defrauded the United States through a systemic pattern and practice of enrolling and re-certifying non-terminal patients, billing for continuous care when such care was neither reasonable nor necessary, providing inadequate services and other violations of the Medicare Conditions of Participation, engaging in conduct to circumvent the Medicare per patient cap amount, and several violations of the anti-kickback law.

46.     HORIZONS HOSPICE, LLC and JOHN C. REZK, conspired and colluded with JOSEPH

REZK, PUNXSY MEDICAL SUPPLY, LLC and PUNXSY MEDICAL SUPPLY, LLC D/B/A

REZK MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC. Defendants

collectively have engaged in a plan or scheme to enlist individuals to elect hospice care who in

fact were not terminally ill as defined by Section 1814(a)(7) of the Social Security Act (42

U.S.C. § 1395) to increase HORIZONS HOSPICE, LLC's number of enrollees in order to gain

payment from Medicare and its fiscal intermediary in a manner which is false or fraudulent.

HORIZONS HOSPICE, LLC and JOHN C. REZK, INDIVIDUALLY, have charged the federal

government for Hospice benefits when no hospice care was truly indicated for enrollees who

were not terminally ill and not eligible for hospice benefits. HORIZONS HOSPICE, LLC and its

owner, JOHN C. REZK, INDIVIDUALLY accomplished this scheme by improperly and

fraudulently enrolling such patients for hospice election when they were, in fact, not terminally

ill or eligible for hospice benefits. These actions have caused the federal government to pay for

hospice benefits that were falsely and fraudulently inflated and submitted by Defendants,

HORIZONS HOSPICE, LLC and JOHN C. REZK, INDIVIDUALLY.

47.     HORIZONS HOSPICE, LLC and JOHN C. REZK, INDIVIDUALLY, instituted a

fraudulent scheme to treat Medicare Hospice Benefit as an improper subsidy for general nursing

home and in-home care. Horizons Hospice, LLC has defrauded the United States through a

systematic pattern and practice in their hospice operations by targeting and enrolling non-

terminal patients and fraudulently billing Medicare and/or Medicaid for hospice services to

patients who do not qualify for the Medicare Hospice Benefit.

48.     Defendant, HORIZON HOSPICE, LLC's fraud took the form of fraudulent certification and re-certification of patients inappropriate for hospice care, which resulted in stable, non-terminal patients remaining under hospice care for years.

49.     Defendant, HORIZONS HOSPICE, LLC, routinely and systematically forged physician signatures related to patient care. Based upon information and belief, Defendant HORIZONS HOSPICE, LLC signed patient medical records, such as assessments, certifications, re-certifications, Certificates of Medical Necessity (CNAs), and other documents directly related to patient care. Plaintiff/ Relators are aware of at least one such instance when a hospice doctor, who was on vacation in India, had his name signed and initialed on multiple patient medical records in his absence.

50.     In anticipation of inspections and visitations from State Regulators Defendant, HORIZONS HOSPICE, LLC, routinely and systematically would alter patient medical records and forge physician signatures. During such times, Defendants would close down its offices and have what was joked about as "shredding parties "or "burning parties." Clearly such acts violate federal standards for participation in the Medicare/ Medicaid programs. Defendant, JOHN C. REZK, INDIVIDUALLY, knew about, or should have known about, this scheme to defraud the United States of America.

51.     A patient appropriate for hospice care will typically be in decline when in the end stage of a terminal illness. One indicator of end stage decline in patients is substantial weight loss. Plaintiffs/ Relators were responsible for weighing and documenting such weight loss of patients in the end stage of a disease. In many cases, the weight of patients, supposedly appropriate for hospice care, would remain the same, or actually increase. In efforts to make the patients appear to be in decline and appropriate for hospice care, the actual weight of these patients were

intentionally and fraudulently changed by hospice representatives of Defendant HORIZONS

HOSPICE, LLC and JOHN C. REZK, INDIVIDUALLY.

52.     The former Medical Director of Defendant HORIZONS HOSPICE, LLC was Oliver W.

Herndon, M.D.  On or about February 14, 2012, The independent office of Oliver W. Herndon,

M.D., LLC, located in Peters Township, was raided by federal and state authorities related to his

illegal prescription of drugs not intended for medical use. This was part of an investigation by

the Drug Enforcement Agency (DEA), and other agencies, related to the improper wholesale

prescription of drugs such as Oxycontin to patients through the independent clinic of Oliver W.

Herndon, M.D., LLC, located in West Mifflin, Pennsylvania. The allegations of the government

were not directly related to his position as Medical Director of Defendant HORIZONS

HOSPICE, LLC. This investigation was initiated as a result of numerous pharmacies reporting

the over-prescription of dangerous and addictive drugs to law enforcement authorities by and

through the independent clinic of Oliver W. Herndon, M.D., LLC. As a result of said

investigation, Oliver W. Herndon, M.D. was arrested in March of 2012, and charged with health

care fraud related to his illegal prescription of drugs not intended for medical use, by and through

his independent clinic. Following a plea bargain agreement with the government, on September

24, 2012, Oliver W. Herndon, M.D. was sentenced by the Honorable Judge Arthur Schwab to

eleven (11) years and three (3) months in federal prison. While Oliver W. Herndon, M.D. was

identified as also being the Medical Director of Defendant HORIZONS HOSPICE, LLC, it was

not implicated or charged by the federal government as part of the health care fraud and scheme

of Oliver W. Herndon, M.D., Individually.

53.     Because of the scrutiny of Oliver W. Herndon, M.D. by federal authorities, Defendant

HORIZONS HOSPICE, LLC began systematically discharging patients, which it knew were not

appropriate for hospice care. The "DAILY CENSUS" of Defendant HORIOZONS HOSPICE, LLC from 7/7/2011 was 169 patients. The "DAILY CENSUS" of Defendant HORIZONS HOSPICE, LLC from 11/7/2012 was 88 patients. This is further evidence that DEFENDANT HORIZONS HOSPICE, LLC and its owner, Defendant, JOHN C. REZK, INDIVIDUALLY had intentionally improperly and fraudulently enrolled nearly half of their patients for hospice election when they were, in fact, not terminally ill or eligible for hospice benefits. False claims associated with these patients caused the federal government to pay for hospice benefits that were falsely and fraudulently inflated and submitted by HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK, INDIVIDUALLY. Based upon information and belief, Defendant, HORIZONS HOSPICE, LLC, did not reimburse the Medicare/ Medicaid program for the discharged patients, who Defendants knew were not eligible for hospice benefits.

54.     Additionally, Defendant, HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK, INDIVIDUALLY, failed to provide less expensive alternatives for Durable Medical Equipment (DME) to patients, due to its fraudulent collusion with Defendants, JOSEPH REZK, INDIVIDUALLY, PUNXSY MEDICAL SUPPLY, LLC and PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC.


### VIOLATIONS OF THE FALSE CLAIMS ACT (FCA) BY DEFENDANT PUNXSY MEDICAL SUPPLY, LLC AND PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY AND REZK MEDICAL SUPPLY, LLC

55.     After improperly admitting stable, non- terminal patients to hospice care by Defendant HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK, INDIVIDUALLY, Defendant PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK

MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC were able to provide

corresponding Durable Medical Equipment (DME), and supplies, that were not needed by such

patients.

56.     Because of the relationship between the familial Defendants, large numbers of

DURABLE MEDICAL EQUIPMENT (DME), and supplies, were ordered that were not needed

by patients

57.     PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A

REZK MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC conspired and

colluded with HORIZONS HOSPICE, LLC. Defendants collectively have engaged in a plan or

scheme to enlist individuals to elect hospice care who in fact were not terminally ill as defined

by Section 1814(a)(7) of the Social Security Act (42 U.S.C. § 1395) to increase the number of

enrollees utilizing Durable Medical Equipment, in order to gain payment from Medicare and its

fiscal intermediary in a manner which is false or fraudulent. PUNXSY MEDICAL SUPPLY,

LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC and

REZK MEDICAL SUPPLY, LLC have charged the federal government for Durable Medical

Equipment (DME), when no hospice care was truly indicated for enrollees who were not

terminally ill and not eligible for hospice benefits with corresponding Durable Medical

Equipment (DME). PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC

D/B/A REZK MEDICAL SUPPLY, LLC, REZK MEDICAL SUPPLY, LLC and its owner,

JOSEPH REZK, INDIVIDUALLY accomplished this scheme by improperly and fraudulently

conspiring and colluding with HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK,

INDIVIDUALLY, to enroll patients for hospice election when they were, in fact, not terminally

ill or eligible for hospice benefits. These actions have caused the federal government to be
fraudulently billed for Durable Medical Equipment (DME), and supplies.

58.     Defendant, PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC
D/B/A REZK MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC looked to
maximize the number of referrals to Defendant, HORIZONS HOSPICE, LLC and potential
enrollees utilizing corresponding Durable Medical Equipment (DME), by visiting and soliciting
areas where vulnerable Medicare- eligible elderly patients tend to congregate. Defendants
aggressively marketed hospice referrals to HORIZONS HOSPICE, LLC and the subsequent and
corresponding Durable Medical equipment (DME) to such patients regardless of whether or not
they were terminally ill and appropriate for hospice care.

59.     PUNXSY MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A
REZK MEDICAL SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC failed to credit the
Medicare/ Medicaid programs for Durable Medical Equipment (DME) returned by patients upon
discharge or death. For example, Plaintiff/ Relator was present in a patient home when PUNXSY
MEDICAL SUPPLY, LLC, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL
SUPPLY, LLC and REZK MEDICAL SUPPLY, LLC attempted to improperly retrieve a
portable commode for improper use, re-use, re- sale and/or re- lease.

60.     HORIZONS HOSPICE, LLC instituted a fraudulent scheme to treat Medicare Hospice
Benefit as an improper subsidy for general nursing home and in-home care. Horizons Hospice,
LLC has defrauded the United States through a systematic pattern and practice in their hospice
operations by targeting and enrolling non-terminal patients and fraudulently billing Medicare
and/or Medicaid for hospice services to patients who do not qualify for the Medicare Hospice
Benefit.

61.    Defendant, JOSEPH REZK's, INDIVIDUALLY, PUNXSY MEDICAL SUPPLY,

LLC's, PUNXSY MEDICAL SUPPLY, LLC D/B/A REZK MEDICAL SUPPLY, LLC's and

REZK MEDICAL SUPPLY, LLC's fraud took the form of fraudulent procurement of patients

inappropriate for hospice care, which resulted in stable, non-terminal patients utilizing

unnecessary Durable Medical Equipment (DME) under hospice care for years.


## DEFENDANTS' COLLECTIVE VIOLATIONS OF THE MEDICARE AND MEDICAID FRAUD AND ABUSE STATUTE, 42 U.S.C. § 1320, ET SEQ. (ANTI- KICKBACK STATUTE)

62.    HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK, INDIVIDUALLY,

targeted nursing homes, whose potential pools of elderly patients offered valuable referral

sources. This was accomplished through a fraudulent quid pro quo pattern and scheme by

DEFENDANT HORIZONS HOSPICE, LLC and its owner, JOHN C. REZK acting in concert

with their sister companies, PUNXSY MEDICAL SUPPLY, LLC and PUNXSY MEDICAL

SUPPLY, LLC D/B/A DEFENDANT REZK MEDICAL SUPPLY, LLC, REZK MEDICAL

SUPPLY, LLC and its owner, JOSEPH REZK, INDIVIDUALLY. Defendants collectively

conspired and colluded by engaging in a fraudulent pattern and scheme to provide "free" medical

equipment and supplies in exchange for the referral of patients to HORIZONS HOSPICE, LLC.

These companies are owned in whole or in part by relatives JOHN C. REZK, INDIVIDUALLY

and JOSEPH REZK, INDIVIDUALLY. In doing so, Defendants violated The Medicare and

Medicaid Fraud and Abuse Statute (Anti-Kickback Statute), 42 U.S.C. § 1320a-7b (b).

63.    In at least one such instance, Defendant HORIZONS HOSPICE, LLC, and its owner

JOHN C. REZK, INDIVIDUALLY, by and through PUNXSY MEDICAL SUPPLY, LLC ,

PUNXSY MEDICAL SUPPLY, LLC d/b/a Defendant, REZK MEDICAL SUPPLY, LLC,

REZK MEDICAL SUPPLY, LLC and JOSPEH REZK "donated" patient beds, wheelchairs and

gel packs to a nursing home in exchange for referrals to HORIZONS HOSPICE, LLC. This

durable medical equipment was delivered by PUNXSY MEDICAL SUPPLY, LLC , PUNXSY

MEDICAL SUPPLY, LLC d/b/a Defendant, REZK MEDICAL SUPPLY, LLC, and JOSPEH

REZK to said nursing home. Plaintiff/ Relator, LINDA WERMLINGER was on site when the

equipment was delivered, when she was required to help "store" some of the equipment in the

basement of the nursing home in question (McKean Manor Care Home in Donora,

Pennsylvania). When the nursing home obtained a new director and switched hospice providers,

Defendants demanded the return of the "donated" Durable Medical Equipment (DME), but was

not successful in getting them back.

64.     In another quid pro quo scheme, Defendants provided free medical durable equipment

and supplies to an Order of nuns who operate a non- profit personal care home. The Durable

Medical Equipment (DME) and supplies were donated by Rezk Medical Supply under the guise

of its owner, JOHN REZK, being a "benefactor." In fear of losing such a valuable "benefactor,"

hospice patients are referred to HORIZONS HOSPICE, LLC.

65.     In other such quid pro quo efforts, representatives of PUNXSY MEDICAL SUPPLY,

LLC , PUNXSY MEDICAL SUPPLY, LLC d/b/a Defendant, REZK MEDICAL SUPPLY, LLC,

REZK MEDICAL SUPPLY, LLC, and JOSPEH REZK, owned and operated by the familial

owners of HORIZONS HOSPICE, LLC, worked with, and convinced doctors with patients

having conditions and a diagnosis that were, or might be, construed as terminally ill, to refer

such patients to HORIZONS HOSPICE, LLC. Once referred to HORIZONS HOSPICE, LLC,

such patients would then be provided with durable medical equipment provided by PUNXSY

MEDICAL SUPPLY, LLC , PUNXSY MEDICAL SUPPLY, LLC d/b/a Defendant, REZK

MEDICAL SUPPLY, LLC, and JOSPEH REZK.

66.     By engaging in such quid pro quo schemes to gain referrals, Defendant, HORIZONS

HOSPICE, LLC and its owner JOHN C. REZK and PUNXSY MEDICAL SUPPLY, LLC ,

PUNXSY MEDICAL SUPPLY, LLC d/b/a Defendant, REZK MEDICAL SUPPLY, LLC, and

JOSPEH REZK violated various anti- kickback regulations, including Section 1128 (b)(7) of the

Social Security Act, which prohibits, "offering or paying remuneration in return for referrals of

Medicare or Medicaid patients or for referrals for services or items which are paid for, in whole

or in part, by Medicare or Medicaid." The anti kickback statute strictly prohibits the solicitation,

receipt, offer or payment of "anything of value" to induce referrals of items or services payable

by any federal health care program.

**COUNT ONE**

**31 U.S.C. § 3729(a)(1) and 3729(a)(2)**
**FALSE CLAIMS FOR NON-QUALIFYING HOSPICE PATIENTS**

67.     Plaintiffs- Relators adopt and incorporate the previous paragraphs as though fully set

forth herein.

68.     Defendants knowingly presented or caused to be presented, to an officer or employee of

the United States a false or fraudulent claim for payment or approval, to wit: Defendants

knowingly certified and/or re- certified Hospice patients whom they knew did not qualify for

Medicare or Medicaid reimbursement and presented or caused to be presented false claims to the

United States through Medicare or Medicaid for payment of same.

69.     Defendants' fraudulent actions, as described *supra*, are part of a widespread, systematic

pattern and practice of knowingly submitting or causing to be submitted false claims to the

United States through fraudulent certification and re- certification of Hospice patients and fraudulent billing of the United States through Medicare or Medicaid.

70.     By and through the actions described *supra*, Defendants knowingly made, used, or caused to be made or used, false certifications regarding past, present, or future compliance with a prerequisite for payment or reimbursement by the United States through Medicarre and Medicaid.

71.     Defendants' fraudulent actions described herein have resulted in damage to the United States equal to an amount paid or reimbursed to Defendants by the United States through Medicare and Medicaid for such false or fraudulent claims.

WHEREFORE, Plaintiff- Relators demand judgment in their favor on behalf of the United States, and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Plaintiff- Relators may be entitled.


## COUNT TWO

## SUPPRESSION, FRAUD, AND DECEIT

72.     Plaintiff- Relators adopt and incorporate the previous paragraphs as though fully set forth herein.

73.     Defendants misrepresented or suppressed the material fact that a substantial number of their patients enrolled in Hospice do not qualify for hospice and are not terminally ill.

74.    Defendants were legally obligated to communicate to the United States that they had

enrolled patients to Hospice, and that they had billed the United States for services to patients

who do not qualify for Hospice and who are not terminally ill.

75.    Such misrepresentations were made willfully to deceive or recklessly without knowledge.

76.    The United States acted on Defendants' material misrepresentations described herein to

its detriment.

77.    Defendants' fraudulent actions described herein have resulted in damage to the United

States equal to the amount paid by the United States to Defendants and others as a result as a

result of Defendants' fraudulent claims.

WHEREFORE, Plaintiff- Relators demand judgment in their favor on behalf of the United States

and against Defendants pursuant to 31 U.S.C. § 3732 in an amount sufficient to compensate the

United States for Defendants' fraud, suppression, and deceit, together with punitive damages in

an amount calculated to deter Defendants from engaging in such conduct in the future, along

with attorney's fees, costs, interest, and any other, further, or different relief to which Plaintiff-

Relators may be entitled.

## COUNT THREE

### 31 U.S.C. § 3729(a)(3)
### CONSPIRACY

78.    Plaintiff- Relators adopt and incorporate the previous paragraphs as though fully set forth

herein.

79.    Defendants knowingly presented or caused to be presented, to an officer or employee of

the United States a false or fraudulent claim for payment or approval, to wit: Defendants

knowingly certified and/or re- certified Hospice patients whom they knew did not qualify for

Medicare or Medicaid reimbursement and presented or caused to be presented false claims to the United States through Medicare or Medicaid for payment of same.

80.     Defendants knowingly enrolled and certified non-qualifying patients for skilled nursing and knowingly planned and ordered such care for patients who were not suited for such care and did not qualify for Medicare and Medicaid reimbursement and presented or caused to be presented false claims to the United States through Medicare or Medicaid for payment of same.

81.     Defendants collectively conspired and colluded by engaging in a fraudulent pattern and scheme to provide "free" medical equipment and supplies in exchange for the referral of patients to Hospice.

82.     The United States paid Defendants for such false claims.

83.     Defendants in concert with their owners, principals, agents, employees, subsidiaries, familial companies and other institutions did agree to submit such false claims to the United States.

84.     Defendants along with their owners, principals, agents, employees, subsidiaries, familial companies and other institutions acted, by and through the conduct described supra, with the intent to defraud the United States by submitting false claims for payment to the United States through Medicare or Medicaid.

85.     Defendants' fraudulent actions, together with the fraudulent actions of their owners, principals, agents, employees, subsidiaries, familial companies and other institutions have resulted in damage to the United States equal to the amount paid by the United States to Defendants and others as a result of Defendants' fraudulent claims.

WHEREFORE, Plaintiff- Relators demand judgment in their favor on behalf of the United States and against Defendants, in an amount equal to treble the damages sustained by reason of

Defendants' conduct, together with civil penalties as permitted by 21 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, different, or further relief to which Plaintiff- Relators may be entitled.

## COUNT FOUR

## UNJUST ENRICHMENT

86.     Plaintiff- Relators adopt and incorporate the previous paragraphs as though fully set forth herein.

87.     This is a claim for recovery of monies by which Defendants were unjustly enriched.

88.     By virtue of the conduct and the acts described above, Defendants were unjustly enriched at the expense of the United States in an amount to be determined, which, under the circumstances in equity and good conscience, should be returned to the United States.

WHEREFORE, Plaintiff- Relators demand judgment in their favor on behalf of the United States and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 21 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, different, or further relief to which Plaintiff- Relators may be entitled.

## COUNT FIVE

## 31 U.S.C. § 3729(a)(1) and 3729(a)(2), FALSE CLAIMS
## THE MEDICARE AND MEDICAID FRAUD AND ABUSE STATUTE
## (ANTI-KICKBACK STATUTE), 42 U.S.C. § 1320a-7b(b)

89.     Plaintiff- Relators adopt and incorporate the previous paragraphs as though fully set forth herein.

90.     By virtue of the acts described above, Defendant knowingly engaged in kickback

schemes for the purpose of inducing, and did induce, the presentation of false or fraudulent

claims to the United States Government for the payment of medical services and the provision of

Durable Medical Equipment (DME), as described above.

91. The United States, unaware of the falsity of the records, statements or claims made

by the defendants or the kickbacks involved, paid the Defendant for claims that would otherwise

not have been allowed.

92. By reason of these payments, the United States has been damaged, and continues to

be damaged, in a substantial amount.

WHEREFORE, Plaintiff- Relators demand judgment in their favor on behalf of the United States

and against Defendants, in an amount equal to treble the damages sustained by reason of

Defendants' conduct, together with civil penalties as permitted by 21 U.S.C. § 3729, attorneys'

fees, costs, interest, and such other, different, or further relief to which Plaintiff- Relators may be

entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiff- Relators, on behalf of themselves and the

United States Government, prays:

(i)     That this Court enter a judgment against Defendant in an amount equal to three

        times the amount of damages the United States has sustained as a result of

        Defendants' violations of the False Claims Act;

(ii)    that this Court enter a judgment against Defendants for a civil penalty of

        $10,000.00 for each of Defendants' violations of the False Claims Act;

(iii)   that Plaintiff- Relators recover all costs of this action, with interest, including the

        cost to the United States Government for its expenses related to this action;

(iv)   that Plaintiff- Relators be awarded all reasonable attorneys' fees in bringing this action;

(v)    that in the event that the United States Government proceeds with this action, Plaintiff- Relators be awarded an amount bringing this action of 25% of the proceeds of the action;

(vi)   that in the event the United States does not proceed with this action, Plaintiff- Relators be awarded an amount for bringing this action of 30% of the proceeds of the action;

(vii)  that Plaintiff- Relators be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix)   that Plaintiff- Relators and the United States of America receive all relief to which either or both may be entitled at law or in equity,

## DEMAND FOR TRIAL BY JURY

Plaintiff- Relators demand trial by jury on all issues so triable.

Respectfully submitted,

s/ Robert Davant, III

_____

Robert M. Davant, III
Attorney & Counselor at Law
One Oxford Centre
301 Grant Street
Suite 4300
Pittsburgh, PA 15219
State Bar I.D. # 310250
Tel:    (412) 519- 2274
Fax:    (412) 904- 3255

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served by Plaintiffs- Relators upon the following governmental units in compliance with Rule 4 of the Federal Rules of Civil Procedure on this the ___26th___ day of ___November_____, 2013:

By Certified Mail Return Receipt Requested:

Attorney General of the United States
U.S. Department of Justice
Medicare/ Medicaid Fraud Division
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

By Certified Mail Return Receipt Requested:

United States Attorney's Office
Medicare/ Medicaid Fraud Division
United States Post Office & Courthouse
700 Grant Street,
Suite 4000
Pittsburgh, Pennsylvania 15219

Respectfully Submitted,

s/Robert M. Davant, III
_____
Robert M. Davant, III, Esquire